1

2

3

4          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
5                    AT TACOMA

6  Jonathan Daniel Smith ,

7                          Plaintiff,          Case No. 3:19-cv-05838-RSL-TLF

8          v.                                  REPORT AND
                                               RECOMMENDATION
9  Robin Souvenir, *et al.*,
                                               Noted for March 19, 2021
                          Defendants.
10

11         This matter is before the Court on a motion for summary judgment by Defendants

12  Robin Souvenir, Tony Kimball and Pat Matlock ("Defendants"). Dkt. 30. Plaintiff,

13  proceeding *pro se* and *in forma pauperis*, alleges claims under 42 U.S.C. § 1983 for

14  violation of his Fourteenth Amendment rights by failing to protect him from assault by a

15  fellow inmate and improperly delaying his medical care; Plaintiff also alleges that the

16  same conduct violates the Eighth Amendment. Dkt. 20. This matter has been referred to

17  the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261

18  (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth

19  below, the undersigned recommends the Court GRANT in part and DENY in part

20  Defendant's motion.

21                          **PROCEDURAL HISTORY**

22         Plaintiff is currently confined by the Washington State Department of Corrections,

23  but at the time relevant to his complaint was a pretrial detainee at the Pacific County Jail

24  (the "Jail"). Dkt. 20. He initiated this action on September 9, 2019 and filed his second

25

REPORT AND RECOMMENDATION - 1

1   amended complaint—the operative complaint in this matter—on March 26, 2020. Dkts.

2   1, 20.

3          On August 12, 2020, Defendants filed their motion for summary judgment,

4   together with a *Rand* notice and the supporting declarations of Tony Kimball, Robin

5   Souvenir and Pat Matlock. Dkts. 30, 31, 32, 33, 34. On January 16, 2021, Plaintiff filed

6   several documents and motions that, collectively, the Court construes as his response

7   to Defendants' motion:  a motion to remove Defendant Robin Souvenir (Dkt. 49), a

8   response to Defendants' Answer (Dkt. 52), a "motion of injunction" (Dkt. 53) and a

9   "motion to proceed to trial" (Dkt. 54).[1] Defendants have responded to each of these.

10  Dkts. 55, 58, 59, 60, 61.

11                                    **FACTS**

12         Plaintiff's second amended complaint ("complaint") is signed under penalty of

13  perjury. Dkt. 20 at 18. Therefore, the complaint's allegations are considered as evidence

14  in opposition to summary judgment, to the extent that they are based on personal

15  knowledge and set forth facts that would be admissible in evidence. *Jones v. Blanas*,

16  393 F.3d 918, 923 (9th Cir. 2004).

17  **A.     Facts Asserted by Plaintiff**

18         Plaintiff's complaint alleges that on September 10, 2016 at approximately 2:00

19  a.m., he was violently assaulted by Darren Carlson, a fellow inmate at the Pacific

20  County Jail. Dkt. 20 at 6. Plaintiff alleges his face and neck area went numb and he was

21  in extreme pain. *Id.* Plaintiff states that as inmate Carlson continued to pursue him,

22

23  _____

24  [1] Plaintiff also filed a motion to compel video footage (Dkt. 50) and a motion to strike (Dkt. 51) which the
    Court addresses in a separate order.

25

1  Plaintiff pressed the emergency button and told Defendant Kimball, the duty officer at
2  the time, that he needed to be moved. *Id.* at 7.

3      Plaintiff asserts that Defendant Kimball opened the door to the Sallyport but
4  explained that Plaintiff could not be moved to a new living unit until additional officers
5  arrived at the jail. *Id.* Plaintiff told Defendant Kimball that he thought his jaw had been
6  broken and requested immediate medical help. *Id.* About an hour later, additional
7  officers arrived; Plaintiff was moved from the Sallyport to a different unit. *Id.* Plaintiff
8  requested that the newly arrived officers be permitted to take him to the hospital and
9  again reported that he was in "extreme pain" and needed immediate medical attention;
10 Plaintiff asserts that he was "in tears of pain." *Id.* at 8. Defendant Kimball told Plaintiff he
11 would have to wait for shift change, in another four hours. *Id.* In fact, Plaintiff asserts he
12 was not seen by a nurse for seven hours, and then Defendant Kimball took him to the
13 hospital. *Id.* Plaintiff was diagnosed with a broken jaw and was treated on September
14 12, 2016 at an outside oral surgery clinic. *Id.*

15     Plaintiff alleges that Carlson was booked into the Pacific County jail and placed in
16 Plaintiff's living unit on August 20, 2016. *Id.* at 11. Plaintiff states that he repeatedly
17 requested that he be housed separately from Carlson but neither of them was moved.
18 *Id.* at 14. Plaintiff states that on August 27, 2016, Plaintiff witnessed Carlson assaulting
19 a third inmate, Jacob Mollester; Plaintiff claims that a Jail staff member, either
20 defendant Kimball or Sergeant Patterson, also witnessed this attack and admitted this to
21 Plaintiff while they were at the hospital after Plaintiff's assault. *Id.* While staff moved
22 Mollester to another unit, Plaintiff's requests to be moved as well—which he made both
23 before and after Mollester's assault—were not heeded. *Id.*

24

25

Plaintiff brings his claims against Tony Kimball, a corrections officer at the Jail, for inadequate medical care and failure to protect; the same claims are also alleged against Pat Matlock, Chief Criminal Deputy for the Pacific County Sheriff's Office (who is alleged to be the Jail administrator) and Robin Souvenir, Pacific County Sherriff. Dkt. 20 at 4. Plaintiff seeks payment of any unpaid medical bills, monetary damages, an apology and a change in staffing and emergency medical procedures at the Jail. Dkt. 20 at 19.

**B.    Facts Asserted by Defendants**

Defendants submitted declarations from Anthony Kimball, Pat Matlock and Robin Souvenir. Dkts. 32, 33, 34.

### 1.    Events of September 10, 2016

Defendants' declarations state that on the night of Plaintiff's assault, Defendant Kimball was the sole officer on duty at the Jail. Dkt. 32 at 3; Dkt. 34 at 3. At approximately 1:00 A.M., Defendant Kimball received an emergency notification from Plaintiff asking to be moved to another cell. *Id.* Defendant Kimball contends that Plaintiff did not respond when asked why he wanted to be moved. *Id.* Defendant Matlock contends that "records" (which are not identified or attached to any of Defendants' declarations) reflect that Plaintiff did not explain that he had been assaulted or was injured, despite repeated questions by Defendant Kimball. Dkt. 34 at 3.

In response to Plaintiff's emergency notification, Defendant Kimball opened Plaintiff's cell door to permit Plaintiff to move to the Sallyport. *Id.* Because Defendant Kimball was alone on duty, Jail regulations prohibited him from actually moving Plaintiff to a new cell without additional officer support; however, Plaintiff's movement into the

Sallyport provided separation from Inmate Carlson during the interim before his move could be completed. *Id.*

Approximately 40 minutes later, backup officers from different jurisdictions arrived to assist with Plaintiff's move. *Id.* Defendant Kimball contends that during this period Plaintiff did not explain why he wanted to be moved, but after the additional officers arrived, Plaintiff stated he had been assaulted and was injured. *Id.* Due to his reports of injuries, Plaintiff was placed in the Medical Isolation unit. *Id.* Defendant Kimball then notified his supervisor, non-party Sergeant Patterson, of the assault and contacted the on-call nurse to determine appropriate medical treatment. *Id.* at 3–4. Defendant Kimball is not himself authorized to render medical assistance or to transport a prisoner to the hospital without direction from a medical professional or supervising officer. *Id.* at 4.

Defendant Kimball was not contacted by the on-call nurse until 8:38 a.m. *Id.* The nurse instructed that Plaintiff should be taken to the hospital for evaluation. *Id.* By that time, a second officer had come on shift and Defendant Kimball received permission from his supervisor, Defendant Matlock, to leave the Jail to take Plaintiff to the nearby hospital. *Id.* at 4, n.1. Defendant Kimball denies that he was aware of the extent of Plaintiff's injuries, stating that other than a slight swelling he observed at 8:30 a.m., Plaintiff "showed no signs he had been seriously injured or that he was in serious pain." *Id.*

**2.    Housing of Plaintiff with Inmate Darren Carlson**

Defendants state that pursuant to Jail policy, incoming inmates are screened and evaluated for victim and/or predator status. Dkt. 32 at 2. Both Plaintiff and inmate Carlson were admitted into the general population based upon the results of this

screening process. *Id.* at 2–3. Defendant Matlock states that the inmate assessments provided no reason to believe either Plaintiff or inmate Carlson should have been assigned different security levels. Dkt. 34 at 2.

Defendant Kimball denies that Plaintiff requested, either orally or in writing, to be housed separately from inmate Carlson. Dkt. 32 at 5. Defendant Kimball states that any requests would have been taken down in the Jail's log system and that he has reviewed the logs and found no record of any such request; he also states that he has no personal recollection of a request. *Id.* Finally, Defendant Kimball states that there is no record of any assault on any other inmate by inmate Carlson prior to his assault of Plaintiff. *Id.* Defendant Matlock likewise states that he has found no record, and has no personal recollection, of a prior assault by inmate Carlson or a request by Plaintiff to be moved. Dkt. 34 at 2.

**LEGAL STANDARD**

**C.    Summary Judgment**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is

1    "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific*

2    *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

3          "If the moving party shows the absence of a genuine issue of material fact, the

4    non-moving party must go beyond the pleadings and 'set forth specific facts' that show

5    a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002)

6    (*citing Celotex*, 477 U.S. at 323-24). The non-moving party may not rely upon mere

7    allegations or denials in the pleadings but must set forth specific facts showing that

8    there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

9    (1986). A plaintiff must "produce at least some significant probative evidence tending to

10   support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d

11   959, 963 (9th Cir. 1990). The court must determine whether the specific facts that are

12   presented by the non-moving party, considered along with undisputed context and

13   background facts, would show that a rational or reasonable jury might return a verdict in

14   the non-moving party's favor based on that evidence. *Emeldi v. University of Oregon,*

15   698 F.3d 715, 728-29 (9th Cir. 2012).

16          When the Court considers a motion for summary judgment, "[t]he evidence of the

17   non-movant is to be believed, and all justifiable inferences are to be drawn in [their]

18   favor." *Anderson*, 477 U.S. at 255. The Court is not allowed to weigh evidence or decide

19   credibility. *Id.* If the moving party meets its initial burden, an adverse party may not rest

20   upon the mere allegations or denials of the pleadings; his or her response must set forth

21   specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). The

22   Court may not disregard evidence solely based on its self-serving nature. *Nigro v.*

23   *Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

24

25

**D.    Section 1983**

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

The causation requirement of Section 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)). In addition, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of supervisory liability. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). Because vicarious liability is inapplicable to Section 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.

**DISCUSSION**

**A.    Claims Against Defendant Souvenir**

The claims against Defendant Souvenir should be dismissed with prejudice.

Defendants argue that the claims against Defendant Souvenir should be dismissed because he was not a Pacific County Employee during the relevant time

1   period and did not personally participate in any of the alleged misconduct. Dkt. 30 at 14,

2   19. Plaintiff has agreed that Defendant Souvenir should be dismissed but seeks a

3   dismissal without prejudice. Dkt. 49. Defendants filed with their summary judgment

4   materials a Declaration of Defendant Souvenir in which he states that he was elected

5   Pacific County Sheriff (the capacity in which he is sued in this case) in 2018 and

6   assumed the office in January 2019. Dkt. 33 at 1–2. Thus, Defendant Souvenir was not

7   employed by Pacific County during the 2016 events alleged in the complaint and

8   therefore did not personally participate in any of the alleged constitutional violations. *Id.*

9         Defendants have established that Defendant Souvenir did not personally

10  participate in any of the alleged wrongdoing in this case and is therefore entitled to

11  dismissal as a matter of law. *Leer*, 844 F.2d at 633. Plaintiff agrees that Defendant

12  Souvenir should be dismissed. Dkt. 49. The dismissal should be with prejudice,

13  because no set of circumstances could render Defendant Souvenir liable in this matter.

14  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

15  **B.    Eighth Amendment Claim**

16        The complaint alleges three causes of action against all Defendants: (1) a

17  Fourteenth Amendment claim against for delayed medical treatment; (2) a Fourteenth

18  Amendment claim for failure to protect; and (3) an Eighth Amendment claim based upon

19  the same alleged violations. Dkt. 20. Plaintiff was a pre-trial detainee at the time of the

20  events alleged in the complaint. Dkt. 32 at 2. Accordingly, any claim Plaintiff has for

21  violation of his right to be free from cruel and unusual punishment—which encompasses

22  his claims for both delayed medical care and failure to protect—arises under the

23  Fourteenth Amendment. "Eighth Amendment protections apply only once a prisoner has

24  been convicted of a crime, while pretrial detainees are entitled to the potentially more

25

1    expansive protections of the Due Process Clause of the Fourteenth Amendment."

2    *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016). Accordingly,

3    because Plaintiff's Eighth Amendment claim is redundant of his Fourteenth Amendment

4    claims and the Eighth Amendment is inapplicable to Plaintiff, his Eighth Amendment

5    claim should be dismissed.

6    **C.    Failure to Protect**

7          The Due Process Clause of the Fourteenth Amendment protects pretrial

8    detainees by prohibiting the State from punishing them. *See Bell v. Wolfish*, 441 U.S.

9    520, 535 n. 16 (1979). Detainees have a Fourteenth Amendment due process right "to

10   be free from violence from other inmates." *Castro v. Cty. of Los Angeles*, 833 F.3d

11   1060, 1067 (9th Cir. 2016) (en banc). To state a claim for a violation of this right, a

12   pretrial detainee must establish that the defendant was deliberately indifferent under the

13   following standard:

14         (1) the defendant made an intentional decision with respect to the conditions
           under which the plaintiff was confined;

15

16         (2) those conditions put the plaintiff at substantial risk of suffering serious
           harm;

17
           (3) the defendant did not take reasonable available measures to abate
18         that risk, even though a reasonable official in the circumstances would
           have appreciated the high degree of risk involved—making the
           consequences of the defendant's conduct obvious; and
19

20         (4) by not taking such measures, the defendant caused the plaintiff's
           injuries.

21   *Castro*, 833 F.3d at 1071. The Ninth Circuit has further explained, "With respect to the

22   third element, the defendant's conduct must be objectively unreasonable, a test that will

23   necessarily "turn[ ] on the 'facts and circumstances of each particular case.'" *Id.* (quoted

24

25

REPORT AND RECOMMENDATION - 10

source omitted). The plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 1.    Defendant Kimball

Plaintiff has submitted evidence that Defendant Kimball was aware of an assault by inmate Carlson on a second inmate who was thereafter moved to separate housing, but that Plaintiff's multiple requests to be moved—both before and after this incident— were disregarded. Dkt. 20 at 12–14. Plaintiff's allegations establish knowledge of a danger and failure to take reasonable available measures—moving either inmate Carlson or Plaintiff—that would abate the risk, resulting in Plaintiff's violent assault. Thus, if Plaintiff's evidence is accepted by the trier of fact, he would adequately establish a claim for failure to protect under the Fourteenth Amendment. *Castro*, 833 F.3d at 1071.

Defendant Kimball denies Plaintiff's allegations and assert that he had no knowledge of any prior assault by inmate Carlson and that Plaintiff never requested that he be moved. Dkt. 32 at 4–5. But this presents a disputed issue of the material facts at the heart of Plaintiff's claim. The Court must believe the evidence of the non-moving party and draw all inferences in his favor; it may not weigh the evidence or decide credibility. *Anderson*, 477 U.S. at 255.

Construing the evidence in the light most favorable to the non-moving party, the Court concludes that issues of material fact remain regarding Plaintiff's failure to protect claim against Defendant Kimball. Defendants' motion for summary judgment dismissing Plaintiff's failure to protect claim should be denied as to Defendant Kimball.

1

2    **2.    Defendant Matlock**

3    Defendant Matlock raises an additional defense—that he did not personally

4    participate in the alleged violation and Plaintiff's allegations establish no more than an

5    insufficient claim of supervisory liability. Dkt. 30 at 15–16.

6    Plaintiff's only allegations of conduct by Defendant Matlock are (1) that he came

7    to the hospital after Plaintiff was admitted and paid the charges for Plaintiff's care with a

8    credit card (Dkt. 20 at 8); and (2) that, as jail administrator, Defendant Matlock failed to

9    have sufficient policies in place to address medical emergencies (Dkt. 20 at 9). Plaintiff

10    does not allege that Defendant Matlock had knowledge of inmate Carlson's prior

11    violence against inmate Mollester or Plaintiff's requests to be moved. Indeed, Plaintiff

12    alleges that Jail staff—either Defendant Kimball or Sergeant Patterson—"made a

13    decision to not tell Pat Matlock . . . about the conditions that put the plaintiff . . . in

14    serious harm." Dkt. 20 at 14.

15    Plaintiff has therefore failed to allege any personal participation by Defendant

16    Matlock in the failure to protect him from violence by inmate Carlson. At most, he has

17    alleged that Defendant Matlock should he held vicariously liable as a supervisor, but this

18    is inadequate to state a Section 1983 claim. *Leer*, 844 F.2d at 633; *Monell* 436 U.S. at

19    691.

20    Defendant Matlock's motion for summary judgment dismissing Plaintiff's failure to

21    protect claim against him should be granted.

22    **3.    Failure to Exhaust**

23    Defendants argue that Plaintiff filed no grievances about his conditions of

24    confinement and has therefore failed to exhaust his administrative remedies. Dkt. 30 at

25

22–23. Plaintiff contends he was never informed of the existence of a grievance process and was given no access to any such process. Dkt. 52 at 3; Dkt. 53 at 2.

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, he must first exhaust all available administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a) provides that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). All "available" remedies must be exhausted. *Id.* Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Id.* at 741. Claims that are not exhausted under the PLRA must be dismissed, not stayed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

However, "failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204 (2007)). Defendants bear the initial burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 788 n.5 (9th Cir. 1996)). If the Defendants meet their burden to show an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

1  (citing *Hilao*, 103 F.3d at 788 n.5). The "ultimate burden of proof remains with the

2  defendant." *Id.* (citing *Jones*).

3      Defendants have failed to meet their burden. They have submitted no evidence

4  that a grievance program existed, what its requirements were, that Plaintiff was

5  informed of its existence or that it was available to Plaintiff. Defendants simply make the

6  conclusory assertion in their briefing (unsupported by any evidence) that Plaintiff "could

7  have grieved his cell assignment with Carlson, but did not do so." Dkt. 30 at 23. This is

8  manifestly insufficient to establish a failure to exhaust. *Albino*, 747 F.3d at 1172.

9      Defendants' motion for summary judgment dismissing Plaintiff's claims for failure

10  to exhaust should be denied.

11  **4.    Statute of Limitations**

12      Defendants argue that Plaintiff's conditions of confinement claim is barred by the

13  applicable three-year statute of limitations. Dkt. 30 at 22.

14      In Section 1983 actions, federal courts apply the forum state's personal injury

15  statute of limitations. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007). A

16  three-year statute of limitations applies in Washington. RCW § 4.16.080; *RK Ventures,*

17  *Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). A Section 1983 action

18  accrues, and the statute of limitations begins to run, when a plaintiff knows or has

19  reason to know of the injury that is the basis of his or her action. *Bagley v. CMC Real*

20  *Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991).

21      Plaintiff filed his initial complaint on September 9, 2019. Dkt. 1. The assault that

22  is the basis of his claims occurred on September 10, 2016, just within the three-year

23  limitation period. Dkt. 20 at 6; Dkt. 32 at 3. Defendants argue, however, that Plaintiff's

24

25

REPORT AND RECOMMENDATION - 14

requests to be transferred to housing separate from Darren Johnson occurred prior to the assault, and his claim is therefore outside the limitations period. Dkt. 30 at 22.

While Plaintiff alleges that he requested reassignment before September 10, 2016, he was not injured by Defendants' failure to move him until the assault that took place on that date. Dkt. 20 at 6. "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal quotations omitted). *See Gamez-Abrego v. Orleans Par. Jail*, No. CIV.A. 10-1595, 2010 WL 3523038, at *3 (E.D. La. July 19, 2010), *report and recommendation adopted,* No. CIV.A. 10-1595, 2010 WL 3523037 (E.D. La. Sept. 1, 2010) ("A failure-to-protect claim accrues on the date the prisoner was attacked"). Thus, Plaintiff's claim did not accrue until he was assaulted on September 10, 2016 and it was brought within the applicable three-year statute of limitations.

Defendants' motion for summary judgment dismissing Plaintiff's claims on statute of limitations grounds should be denied.

**D.   Delay of Medical Treatment**

A pretrial detainee's right to adequate medical care, like the right to prison safety, arises under the due process clause of the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018). The elements are the same as for a failure to protect claim, namely: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk . . .; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. "With respect to the

1    third element, the defendant's conduct must be objectively unreasonable, a test that will

2    necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting

3    *Castro*, 833 F.3d at 1071. A defendant's "mere lack of due care" is insufficient to state a

4    Fourteenth Amendment claim. *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted source

5    omitted)). Thus, a plaintiff must "prove more than negligence but less than subjective

6    intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

7         Here, Plaintiff alleges that Defendants delayed his treatment for a broken jaw for

8    seven hours. Dkt. 20 at 8. However, the undisputed facts in this case show that

9    Defendant Kimball promptly placed a call to the on-call nurse and, after the nurse

10   responded, Plaintiff was taken to the hospital and diagnosed with a broken jaw, and his

11   jaw was treated by an oral surgeon two days later. Dkt. 32 at 6; Dkt. 20 at 8–9. Plaintiff

12   does not allege, and there is no evidence in the record to reflect, that the medical

13   treatment Plaintiff received was deficient or objectively unreasonable. Thus, Plaintiff's

14   claim relates solely to the seven-hour period he was required to wait at the Jail before,

15   on the advice of the on-call nurse, he was transported to the hospital.

16        The delay of, or interference with, medical treatment can amount to a violation of

17   a prisoner's right to adequate medical care. *See*, *e.g.*, *Jett v. Penner*, 439 F.3d 1091,

18   1096 (9th Cir. 2006) (more than one year delay in surgery to treat broken thumb);

19   *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other*

20   *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (more than three-

21   year delay in surgery). However, a prisoner must show the delay or interference led to

22   further injury. "Mere delay of surgery, without more, is insufficient to state a claim of

23   deliberate medical indifference . . . [plaintiff has] no claim for deliberate medical

24

25

1  indifference unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison*

2  *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). *See also Hallett v. Morgan*, 296 F.3d 732,

3  746 (9th Cir. 2002) ("Plaintiffs could not prove an Eighth Amendment violation because

4  they have not demonstrated that delays occurred to patients with problems so severe

5  that delays would cause significant harm and that Defendants should have known this

6  to be the case").

7       Plaintiff has submitted no evidence that his jaw injury worsened as a result of

8  the seven-hour delay in treatment. He has therefore failed to establish the element of

9  his claim that Defendants' delay "caused the plaintiff's injuries." *Gordon*, 888 F.3d at

10 1120. Accordingly, the Court recommends that Defendants' motion for summary

11 judgment be granted as to Plaintiff's claim for delay in his medical care.

12 **E.   Qualified Immunity**

13      Finally, Defendants contend that they are entitled to qualified immunity. Because

14 the Court recommends dismissal of all other claims on other grounds, the Court

15 addresses qualified immunity only with respect to the claim against Defendant Kimball

16 for failure to protect.

17      Unless plaintiff makes a two-part showing, qualified immunity shields government

18 officials from liability. The plaintiff must show: (1) the official violated a federal statutory

19 or constitutional right, and (2) at the time of the alleged act or failure to act there was

20 clearly established law that defined the contours of the federal right objectively putting

21 the official on notice – i.e., every reasonable official would understand that what they

22 are doing is unlawful. *Escondido v. Emmons*, 139 S.Ct. 500 (2019); *District of Columbia*

23 *v. Wesby,* 138 S.Ct. 577, 589 (2018).

24

25

1    When qualified immunity is reviewed in the context of a defense motion for

2    summary judgment, the evidence must be considered in the light most favorable to the

3    plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per

4    curiam). Summary judgment granting qualified immunity is inappropriate if there is a

5    genuine issue of material fact concerning both whether it would be clear to a reasonable

6    officer that their conduct was unlawful under the circumstances they confronted, and

7    whether the defendant's conduct violated a constitutional right. *Bonivert v. City of*

8    *Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

9    To determine whether there was clearly established law, the Court has stated,

10   "[w]hile there does not have to be a case directly on point, existing precedent must

11   place the lawfulness of the particular [action] beyond debate"; and the Court has also

12   observed, "there can be the rare obvious case, where the unlawfulness of the officer's

13   conduct is sufficiently clear even though existing precedent does not address similar

14   circumstances." *Wesby,* at 590. A clearly established right exists if "controlling authority

15   or a robust consensus of cases of persuasive authority" have held, on facts that are

16   close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914

17   F.3d 1218, 1229 (9th Cir. Feb. 1, 2019). In some contexts, there may be a general

18   constitutional rule that has been identified in court decisions—and it may apply with

19   such obvious clarity to the specific conduct of a defendant, that qualified immunity will

20   not apply even though existing case law did not describe the specific factual scenario in

21   the current situation. *United States v. Lanier,* 520 U.S. 259, 271 (1997); *Bonivert,* 883

22   F.3d at 872–73.

23

24

25

1    Here, as discussed above, there are material issues of fact regarding whether

2    Defendant Kimball acted with objectively deliberate indifference in failing to move

3    Plaintiff to housing separate from inmate Carlson. Construing the facts in the light most

4    favorable to Plaintiff, Defendant Kimball was aware of inmate Carlson's violent behavior

5    toward a third inmate, received requests from Plaintiff to be moved both before and after

6    the incident with the other inmate, and continued to house Plaintiff with a violent inmate.

7    The Ninth Circuit has previously held the law to be clearly established under similar

8    facts. *Castro*, 833 F.3d at 1067 (rejecting claim of qualified immunity because prisoner's

9    right to be free from being "placed . . . in a cell with a combative inmate" was clearly

10   established).

11    Defendants' motion for summary judgment dismissing Plaintiff's claims on

12   qualified immunity grounds should be denied.

13   **F.    Plaintiff's Motions**

14    As discussed above, the Court recommends that Plaintiff's motion to remove

15   Defendant Robin Souvenir (Dkt. 49) be granted. The Court is issuing a separate order

16   on Plaintiff's motions to compel (Dkt. 50) and to strike (Dkt. 51) and does not address

17   those motions here.

18    Plaintiff has filed additional documents entitled as motions (Dkts. 53, 54), which

19   the Court has construed and considered collectively as part of Plaintiff's response to

20   Defendants' motions for summary judgment. Those motions request that the Court

21   consider all of Plaintiff's motions before ruling on summary judgment. Dkt. 53 at 5–6;

22   Dkt. 54 at 2. The Court has done so and is issuing a separate order regarding the

23   motions not addressed herein. Accordingly, the Court recommends that Plaintiff's

24

25

"motion of injunction to motion for summary judgment" (Dkt. 53) and "motion to proceed to trial" (Dkt. 54) be denied as moot.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court GRANT in part and DENY in part Defendant's motion for summary judgment (Dkt. 30). Specifically, the Court recommends that:

(1) Defendant's motion be GRANTED and Plaintiff's claims for violation of the Eighth Amendment, Plaintiff's claims against Defendant Souvenir, Plaintiff's claims for against Defendant Matlock for failure to protect and Plaintiff's claims against Defendants Matlock and Kimball for delay of medical care be DISMISSED with prejudice; and

(2) Defendant's motion be DENIED with respect to Plaintiff's claims against Defendant Kimball for failure to protect.

The Court further recommends that Plaintiff's motion to remove defendant Robin Souvenir (Dkt. 49) be GRANTED; and that Plaintiff's "motion of injunction to motion for summary judgment" (Dkt. 53) and "motion to proceed to trial" (Dkt. 54) be DENIED as moot.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time

limitation, this matter shall be set for consideration on **March 19, 2021**, as noted in the caption.

Dated this 1st day of March, 2021.


Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21